**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| APMC HOTEL MANAGEMENT, LLC, | 2:09-cv-2100-LDG-VCF |
| Plaintiff, |  |
| v. | **OPINION AND ORDER** |
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND; DOE DEFENDANTS 1-10, |  |
| Defendant. |  |

Plaintiff APMC Hotel Management, LLC ("APMC") filed this suit seeking an additional $304,128.96 under a Commercial Crime Policy issued by Fidelity and Deposit Company of Maryland ("Fidelity"). Both parties have moved for summary judgment (Def.'s Mot. #23, Pl.'s Opp'n #26, Def.'s Reply #34, Def.'s Supplement #39; Pl.'s Mot. #28, Def.'s Opp'n #34, Pl.'s Reply #35; Pl.'s Supplement #38). For the reasons stated below, the court grants Fidelity's motion.

### I. Background

The facts of this case are not in dispute. APMC and Fidelity entered into an agreement starting March 1, 2004, whereby Fidelity would insure APMC for certain losses resulting from employee theft. The policy contained common standard form language. On March 1 of each of the following two years, Fidelity issued a new, identical Policy, thereby canceling the previous one. Each Policy limited liability to $500,000.00 per "occurrence," after a $1,000.00 deductible.

In July 2004, APMC hired Keith Lee as the controller and Chief Financial Officer of the Alexis Park Hotel.  His responsibilities included handling cash and issuing checks from APMC's bank accounts.  Lee began embezzling funds almost immediately.  Alexis Park Resort held a convention from July 29 through July 31, 2004, after which Lee was supposed to deposit monies collected into an APMC bank account.  Lee never deposited those funds.  Instead, Lee kept the cash for himself.  From October 2004 through May 2006, Lee diverted accounts receivable from an APMC bank account.  He did so by writing checks from the account, having them cashed, and keeping the proceeds.  From September 2004 through June 2006, Lee was in charge of depositing money collected in the hotel cash registers into an APMC account.  Lee failed to deposit that money as well, and instead kept it for himself.

APMC fired Lee on June 15, 2006, after discovering his thefts.  The company submitted three separate Proofs of Loss totaling $804,128.96: $52,884.00 for the theft of cash from the convention, $178,588.27 for the theft of the accounts payable, and $572,656.69 for the theft of the daily deposits.  All three Proofs of Loss reference the most recent policy "effective 03/01/2006."

Fidelity concluded that a valid claim existed under the then-current policy covering March 1, 2006, to March 1, 2007.  Fidelity paid APMC $500,000.00, the maximum payment per "occurrence" under the Limit of Insurance Clause.  APMC then brought this suit to recover an additional $304,128.96, representing APMC's total loss.

**II. Analysis**

The purpose of summary judgment is to avoid unnecessary litigation when there is no factual dispute between the parties. *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Both parties agree to the facts surrounding the theft and only disagree about how to interpret the contract.  Interpreting an insurance contract is a matter of law to be decided by the court. *Farmers*

2

1    *Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003).  The court must therefore determine whether the

2    contract allows APMC to collect insurance payments under multiple policy periods and whether

3    Lee's acts constitute more than one "occurrence" under the policy.

4    **A. Recovery Under Successive Policy Terms**

5         APMC argues that it is entitled to recover under each of the three policies issued by

6    Fidelity because Lee's thefts spanned these three policy periods.  *See* Pl.'s Mot. for Summ. J. 6,

7    ECF No. 28.  APMC attempts to show that it can recover under successive policy terms by arguing

8    that the policy's "Non-Cumulation" clause is either inapplicable or ambiguous.  The

9    enforceablility of the non-cumulation clause, however, has no effect on the analysis of this case.

10   As APMC readily admits, this is a discovery policy, meaning that coverage applies to loss

11   discovered within sixty days of the end of the policy period, regardless of when the loss actually

12   occurred.  *See id.* at 14-15.  Although APMC could submit a claim for loss discovered within sixty

13   days of the end of a policy period, no claims can be made under expired or canceled policies.

14   *See,e.g.*, *Karen Kane, Inc. v. Reliance Ins. Co.*, 202 F.3d 1180, 1188-90 (9th Cir. 2000).  APMC

15   discovered Lee's thefts well after the expiration of the sixty-day extended discovery period for

16   claims under either of the first two policies.  *See* Pl.'s Mot. for Summ. J. 6.  Thus, even assuming

17   that the Non-Cumulation clause is either inapplicable or ambiguous, or that APMC could

18   otherwise recover under successive policy periods, the sixty-day discovery rule bars APMC's

19   potential claims under either of the first two policies.  *See, e.g.*, *id.*; *see also A.B.S. Clothing*

20   *Collection, Inc. v. Home Ins. Co.*, 41 Cal. Rptr. 2d 166, 174 (Cal. Ct. App. 1995) (noting that one-

21   year discovery provision would prohibit recovery under prior insurance contract unless losses were

22   discovered within that one-year discovery period).  The relevant inquiry, therefore, is whether

23   Lee's acts constitute more than one "occurrence" under the policy effective March 1, 2006.

24

25

26

3

**B. "Occurrence" Under The 2006-2007 Policy**

APMC seeks a declaration that it is entitled to recover the total loss caused by Lee's embezzlement.  APMC argues that the definition of "occurrence" is ambiguous under analogous Ninth Circuit authority and that the court should consequently construe that provision in favor of APMC.  Accordingly, APMC maintains that it is entitled to recover its total $804,128.96 loss caused by Lee's actions, notwithstanding the $500,000.00 per "occurrence" limit on liability, because Lee's acts constituted three separate "occurrence[s]" under the 2006-2007 policy.[1]

The interpretation of an insurance contract is a question of law.  *Farmers Ins. Exch.*, 64 P.3d at 473 (Nev. 2003).  Policies are interpreted from the viewpoint of one not trained in law or insurance, giving the terms their plain, ordinary, and popular meaning.  *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002) (internal quotation marks omitted).  "An ambiguity exists when a policy provision is subject to two or more reasonable interpretations."  *Gary G. Day Constr. Co., Inc. v. Clarendon Am. Ins. Co.*, 459 F. Supp. 2d 1039, 1045 (D. Nev. 2006) (citing *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 604 (Nev. 1992)).  When an ambiguity exists in an insurance policy, the court should consider not merely the language, but also the intent of the parties, the subject matter of the policy, the circumstances surrounding its issuance, and then construe the policy to effectuate the reasonable expectations of the insured.  *Nat'l Union Fire Ins. Co. v. Caesars Palace Hotel and Casino*, 792 P.2d 1129, 1130 (Nev. 1990).  If these steps do not resolve the ambiguity, the contract is construed against the insurer and in favor of the insured.  *Estate of Delmue v. Allstate Ins. Co.*, 936 P.2d 326, 328 (Nev. 1997).

---

[1] Even assuming, as APMC argues, that Lee's actions constituted three separate "occurrence[s]" under the 2006-2007 policy, APMC would still not be entitled to recover the total $804,128.96 loss caused by Lee's actions. APMC's calculation erroneously disregards the $1,000 per "occurrence" deductible and the $500,000.00 per "occurrence" limit of insurance. Thus, even assuming that Lee's actions constituted three separate "occurrence[s]" under the 2006-2007 policy, APMC could recover no more than $729,472.27 of its total loss, or an additional $229,472.27.

A court construes ambiguous language in favor of the insured by adopting the interpretation that most favors the insured.  *Am. Home Assurance Co. v. Harvey's Wagon Wheel, Inc.*, 398 F. Supp. 379, 382 (D. Nev. 1975); *see also Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990) ("[I]f, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted."). However, "a court will neither rewrite an otherwise unambiguous contract provision nor struggle to find ambiguity where none exists."  *Gary G. Day Constr. Co., Inc.*, 459 F. Supp. 2d at 1045.

APMC argues that the policy's definition of "occurrence" is ambiguous and that this ambiguity requires interpretation in APMC's favor.  The policy defines "occurrence" as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts."  APMC argues that "occurrence" is ambiguous because the Ninth Circuit found the same definition ambiguous in *Karen Kane*.  *See* Pl.'s Mot. for Summ. J. 9.  In that case, the Ninth Circuit held that an insured could recover under successive policy periods because California law generally allows maximum recovery under each separate insurance contract and because "the term 'occurrence' is ambiguous with respect to whether it is temporally limited by policy period."  *Karen Kane*, 202 F.3d at 1186, 1188.  Although the definition of "occurrence" ostensibly includes "all loss" incurred at any time, regardless of whether that loss occurred within the policy period, the policy in *Karen Kane* also specifically limited recovery to loss sustained during the policy period.  *Id.* at 1187 ("The policy places temporal limitations upon loss coverage: 'we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.'").  In light of this temporal limitation on recoverable loss, the court held that "occurrence" was ambiguous because "the policy is silent as to whether the term 'occurrence' refers to 'a single act or series of acts' within a single policy period or across multiple periods."  *Id.*  The policy at issue

1    in the present case, however, is not similarly ambiguous.  The discovery policy in this case does

2    not contain any such temporal limitation on recoverable loss, nor is there any other indication that

3    the definition of "occurrence" is limited to each policy period.  Thus, the ambiguity upon which

4    the holding in *Karen Kane* is based, that "the term 'occurrence' is ambiguous with respect to

5    whether it is temporally limited by policy period," does not apply to the policy in this case.  *Id.* at

6    1188.  However, even assuming that such an ambiguity existed and that APMC could accordingly

7    recover under each successive policy period, APMC's claims under the previous policies are

8    nevertheless barred as explained above.  *See id.* at 1188-90.

9         In urging this court to find "occurrence" ambiguous based on *Karen Kane*, APMC directs

10   the court to language not necessary to the holding of that case.  *See* Pl.'s Mot. for Summ. J. 9.

11   While coming to the conclusion that the district court erred in disregarding the general rule set

12   forth in *A.B.S.* that California law allows maximum recovery under each separate insurance

13   contract, the *Karen Kane* opinion noted that the policy at issue in that case contained language

14   identical to the policy in *A.B.S. See Karen Kane*, 202 F.3d at 1183-85.  In doing so, *Karen Kane*

15   stated:

16        [T]he ambiguity found in the definition of "occurrence" by the *A.B.S.* court is
         present in this case as well. 'Occurrence' could either (1) refer to the entire
17        [employee] conspiracy (as a 'series of acts,' namely, thefts), the position urged by
         [the insurer]; or (2) refer to each theft within the [employee's] conspiracy (as a
18        'series of acts,' namely, the multiple steps involved in each theft).[2]

19

20   _____

21        [2] The *A.B.S.* court, however, never identified this ambiguity. That court rejected an insurer's

22   argument that "defining an 'occurrence' as all loss without limitation to any specific policy period
     supported a finding [that the insurer's consecutive] policies were intended to be part of a single

23   continuing contract under which its liability was limited to a total of $100,000 for all loss during the
     life of the insurance." *A.B.S.*, 41 Cal. Rptr. 2d at 174.  The *A.B.S.* court explained that "while defining

24   'occurrence' as 'all loss' suggests there can be only one occurrence during the life of the insurance,
     [another] provision restricting liability 'for any one occurrence' suggests there could be more than one

25   occurrence." *Id.*  This potential ambiguity has no bearing on the present case because neither party
     contends that there may only be one "occurrence" during the life of the insurance. *See* Def.'s Mot. for

26   Summ. J. 7 n.2., ECF No. 23; Pl.'s Reply 5 n.4, ECF No. 35.

6

1    *Id.* at 1185.  This alleged ambiguity, however, does not advance APMC's position.  If "series of

2    acts" refers to "the entire [Lee] conspiracy," then all of Lee's thefts constitute one "occurrence"

3    under the policy.  Fidelity has already paid APMC according this interpretation.  If, alternatively,

4    "series of acts" refers to "the multiple steps involved in each theft," then each of Lee's thefts

5    constitute a separate "occurrence" under the policy, each subject to a $1,000 deductible.  APMC,

6    however, admits that this alternative interpretation is actually less favorable to it than Fidelity's

7    interpretation.  As noted above, policy language is ambiguous if it may be reasonably interpreted

8    in two or more ways, and courts construe ambiguous language in favor of the insured by adopting

9    the interpretation most favorable to the insured.  The alternative interpretations mentioned in

10   *Karen Kane* cannot further APMC's argument because, even assuming the court were to construe

11   this ambiguity in APMC's favor as APMC initially urged, *see* Pl.'s Mot. for Summ. J. 9, the court

12   would simply affirm the more favorable interpretation already employed by Fidelity.  Apparently

13   recognizing this problem, APMC invites the court to conclude that Lee's actions constituted three

14   separate "occurrence[s]" under the policy.

15          APMC suggests that because the Ninth Circuit found the same definition of "occurrence"

16   ambiguous in *Karen Kane*, this court should interpret that ambiguity against Fidelity and find that

17   Lee's thefts constituted three separate "occurrence[s]" under the 2006-2007 policy.  The temporal

18   ambiguity identified in *Karen Kane*, and upon which its "occurrence" holding is based, does not

19   apply to the discovery policy in this case.  The other potential ambiguity mentioned in *Karen*

20   *Kane*, that "occurrence" refers either to an employee's entire conspiracy or to each theft within that

21   conspiracy, supports the amount already tendered by Fidelity.  More fundamentally, however,

22   APMC is not actually asking the court to construe this ambiguity in its favor.  APMC instead

23   invites the court to adopt a third interpretation of "occurrence" not found in *Karen Kane*.  Thus,

24   APMC's reliance on *Karen Kane* does nothing to advance its position.

25

26

7

The policy defines "occurrence" as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts." All loss "caused by, or involving" Lee totaled $804,128.96. This total constituted one "occurrence," whether it was "the result of a single act or series of acts." APMC argues that the word "series" in the phrase "series of acts" imposes a relatedness condition between multiple "acts" upon which an "occurrence" may be based. In other words, "series" in "series of acts" limits an "occurrence" to the total amount of loss caused by the same employee (or employees) and caused in the same way. Thus, APMC argues that Lee's actions constitute three separate "occurrence[s]" under the policy because he used three general methods to commit a number of thefts. This is not a reasonable interpretation of the "occurrence" provision, and the court will not struggle to find this ambiguity. The phrase "series of acts" clearly refers to a sequence of loss inducing acts. The word "series" within the larger phrase "whether the result of a single act or series of acts" primarily supplies a numerical contrast to the word "single." Although "series" does impose a relatedness condition between the multiple acts upon which an "occurrence" is based, those "acts" are related in that they were committed by an employee (or employees) and that they caused loss, not that they caused loss in any particular way. Other courts interpreting the same definition of "occurrence" have rejected the very argument APMC now makes. *See Aldridge Elec., Inc. v. Fid. and Deposit Co. of Md.*, No. 04 C 4021, 2008 WL 4287639, at *1, *3-7 (N.D. Ill. Sept. 10, 2008) (rejecting the argument that an employee's actions constituted two different occurrences under the plan because that employee used two different methods to embezzle funds from an employer); *Glaser v. Hartford Cas. Ins. Co.*, 364 F. Supp. 2d 529, 536-38 (D. Md. 2005) (rejecting an argument that insurer "is liable for multiple occurrences within a policy year because the employee . . . used [seven] different fraudulent means to embezzle funds.")[3]; *Wausau Bus. Ins. Co. v. U.S. Motels Mgmt, Inc.*, 341 F.

---

[3] The definition of "occurrence" in *Glaser* contained an additional word not included in the definition of "occurrence" in this case – "whether the result of a single act or *a* series of acts." *See Glaser*, 364 F. Supp. 2d at 537 (additional word emphasized). The court is not convinced that this

8

Supp. 2d 1180, 1183-84 (D. Colo. 2004) ("Focusing on the notion that a 'series of acts' implies relatedness, defendant maintains that its dishonest employee's various embezzlement ploys were separate and distinct occurrences because each involved a different modality and occurred in a different, albeit overlapping, time frame. The court cannot agree.").  Furthermore, none of APMC's cases support its argument on this issue.

APMC primarily relies on *American Commerce Insurance Brokers, Inc. v. Minnesota Mutual Fire and Casualty Co.*, 551 N.W.2d 224 (Minn. 1996), to support its argument that Lee's actions constitute three separate "occurrence[s]" under the 2006-2007 policy.  In that case, the Minnesota Supreme Court held that an employee's 155 individual acts of theft, perpetrated in one of two ways, constituted two separate occurrences under a commercial crime policy that defined "occurrence" with reference to a "series of related acts."  *See Am. Commerce Ins. Brokers*, 551 N.W.2d at 229-31.  In coming to that result, the *American Commerce* court adopted a modified cause theory of occurrence and specifically held that "a court may consider several factors in concluding whether dishonest acts are part of a 'series of related acts,' including whether the acts are connected by time, place, opportunity, pattern, and, most importantly, method or modus operandi."  *Id.* at 231.  The reasoning of *American Commerce* is inapposite here, however, because a modified cause theory is inconsistent with the traditional cause theory adopted by the Nevada Supreme Court in other aspects of insurance contract law, *see Bish v. Guar. Nat'l Ins. Co.*, 848 P.2d 1057, 1058 (Nev. 1993), and because the definition of "occurrence" in the present controversy differs significantly from the definition evaluated in *American Commerce*.  The word "related" in the phrase "series of related acts" seems to approximate more closely the relatedness interpretation urged by APMC, but such an interpretation is not justified under the phrase "series

difference justifies a different result.

9

of acts" as used in the policy in this case.[4]   Indeed, it is strange that APMC urges this court to adopt the reasoning of *American Commerce*.  If this court analyzes the phrase "series of acts" in the same way *American Commerce* analyzed the phrase "series of related acts," then this court must implicitly hold that the word "related" is meaningless in the phrase "series of related acts." That result is unreasonable and circumscribes well established rules of contract interpretation. Thus, an analysis of the phrase "series of acts" will necessarily differ from the analysis in *American Commerce*.  Furthermore, even if this court were to accept *American Commerce*, that case, by its own terms, would still not apply because this court is not interpreting the phrase "series of related acts."  *See id.* at 231 ("[W]e hold that a court may consider several factors in concluding whether dishonest acts are part of a 'series of related acts,' including . . . .").

APMC also relies on *Basler Turbo Conversions LLC v. HCC Insurance Co.*, 601 F. Supp. 2d 1082 (E.D. Wis. 2009), *B.H.D., Inc. v. Nippon Insurance Co.*, 54 Cal. Rptr. 2d 272 (Cal. Ct. App. 1996), and *Cincinnati Insurance Co. v. Sherman & Hemstreet, Inc.*, 581 S.E.2d 613 (Ga. Ct. App. 2003).  These cases are either irrelevant or undermine APMC's argument.  In *Basler*, the court rejected an insurer's argument that each of an employee's thirty-three (33) incidents of theft committed over the course of six months constituted only one "occurrence" under an insurance policy.  That court, after determining that the policy did not define "occurrence," specifically rejected an insurer's argument that there was only one "occurrence" because the employee had used the same method to commit various thefts.  *Basler*, 601 F. Supp. 2d at 1089-91.  That court stated:

---

[4] The definition of "occurrence" evaluated in *American Commerce* differs from the definition "occurrence" in this case in other very significant ways.  *See* 551 N.W.2d at 226.  For example, under that policy "one occurrence" consists of "[a]ll loss or damage" either "(1) [c]aused by one or more persons; or (2) [i]nvolving a single act or series of related acts . . . ."  *Id.*  Thus, assuming that the *American Commerce* opinion accurately represents the policy definition at issue in that case, all of the employee's acts actually constituted only one "occurrence" under that policy, not two.  Assuming, however, that *American Commerce* does not accurately represent the disputed policy definition, then it is even more difficult to make any reliable comparative policy analysis based on the language of that opinion.

> The fact that a thief used the same *modus operandi* to commit a series of thefts against the same victim does not mean only one theft occurred. It was not a *modus operandi* or scheme that caused the succession of thefts to BTC's storage facility, but separate and independent human actions that were the product of human deliberation and choice separated by significant intervals of time.

*Id.* at 1091.  The *B.H.D.* court, also in the absence of a policy definition of "occurrence," similarly rejected the argument that the mode of theft should dictate the number of occurrences under the policy.  54 Cal. Rptr. 2d at 274 ("[A]ppellant argues that the $10,000 deductible should be applied to the aggregated amount of the loss, since all the thefts were of the same kind, committed in the same way by the same person, and all were submitted on a single claim . . . We do not find that contention to be tenable.").  Neither of these cases support APMC's contention that Lee's acts constituted three separate "occurrence[s]" under the policy.  Neither of the policies examined in these cases defined the term "occurrence," and *B.H.D.* did not involve employee theft.  More fundamentally, however, these cases reject the very interpretation APMC seeks.  Both cases refuse to define an "occurrence" based on the mode used to perpetrate the thefts.  In fact, these cases seem to support the alternative interpretation in *Karen Kane* that APMC admits is less favorable than the interpretation already adopted by Fidelity.  Finally, the discussion of "occurrence" in *Cincinnati Insurance* involves only the irrelevant non-cumulation clause issue and inapplicable temporal limitation already addressed above.  581 S.E.2d at 615-16.

Lee's actions constitute one "occurrence" under the policy.  APMC's contention that Lee's actions should constitute three separate "occurrence[s]" is contrary to the language of that provision.  Additionally, other courts interpreting this same definition of "occurrence" have rejected APMC's very argument.  APMC's cases are either irrelevant or undermine APMC's argument that the mode of theft should dictate the number of occurrences under the policy.  The alternative interpretation mentioned in *Karen Kane* and apparently supported by some of APMC's other cases, the only potentially reasonable ambiguity suggested by APMC, is actually less

favorable than the interpretation already adopted by Fidelity.  Construing the ambiguity mentioned in *Karen Kane* against Fidelity, Lee's actions constitute one "occurrence" under the policy.

### III. Conclusion

Accordingly, and for the reasons stated herein,

THE COURT HEREBY ORDERS that APMC's motion for summary judgment (#28) is REINSTATED and DENIED.

THE COURT FURTHER ORDERS that Fidelity's motion for summary judgment (#23) is REINSTATED and GRANTED.


DATED this ___10___ day of November 2011.

_____
Lloyd D. George
United States District Judge